## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 05 2015, 8:59 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kelly A. Miklos
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tommy Rans,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 5, 2015<br><br>Court of Appeals Case No.<br>71A03-1412-CR-446<br><br>Appeal from the St. Joseph Superior Court<br><br>Lower Court Cause No.<br>71D03-1212-FB-187<br><br>The Honorable Jerome Frese, Judge |

**Pyle, Judge.**

# Statement of the Case

Tommy Rans ("Rans") appeals his conviction, after a jury trial, for Class B felony burglary.[1]  On appeal, he argues that the evidence is insufficient to support his conviction because the identification provided by the State's witness did not prove that he committed the burglary.  Concluding that Rans's argument on appeal is a request to reweigh the evidence, we affirm his conviction.

We affirm.

# Issue

Whether sufficient evidence supports Rans's conviction.

# Facts

On December 21, 2012, Sarah Horn ("Sarah") was visiting her mother, Dr. Kathleen Horn ("Dr. Horn") at her home in Mishawaka.  That morning, after Dr. Horn left for work, Sarah was awakened by a loud crash coming from downstairs.  When Sarah came out of her bedroom, she heard shuffling noises coming from her mother's room that sounded like a person.  She called out, and a man wearing a black "poofy" coat came into the hallway.  (Tr. 53).  Rans told Sarah that he was in the wrong house, apologized, and then walked past her to

---

[1] IND. CODE § 35-43-2-1. We note that effective July 1, 2014, a new version of this burglary statute was enacted and that Class B felony burglary is now a Level 4 felony.  Because Rans committed his crime in 2012, we will apply the statute in effect at that time.

leave the house. Sarah followed the man downstairs, looked at the backdoor, saw that it was broken, and called 911.

[5] Around the same time, off-duty Officer Galen Pelletier ("Officer Pelletier"), with the South Bend Police Department, noticed Rans running along the same street where Dr. Horn's house is located. Officer Pelletier thought that Rans looked "like he was afraid of something." (Tr. 90). Officer Pelletier observed that Rans was wearing a heavy black coat. Rans then fled into a wooded area, and Officer Pelletier flagged down other arriving officers and pointed them in the direction that Rans had fled.

[6] Shortly thereafter, Cristy Kaniewski ("Kaniewski"), who was working in a business adjacent to the woods, observed Rans running from the wooded area. Kaniewski watched Rans as he walked through the back parking lot, approached her parked car, and attempted to open the locked rear door. She noticed that Rans looked both ways "like he was looking for someone." (Tr. 111). At that point, Kaniewski went outside, flagged down a police officer, and directed them to the parking lot where Rans was found hiding between two cars. After locating Rans, officers noted a single track of footprints leading from the wooded area into the parking lot. Officers followed the footprints and found a discarded heavy black coat. They concluded that the coat had just been placed there because it had snowed the previous evening, and there was no snow on top of the coat. In addition, officers observed another set of footprints in the wooded area leading to the coat. All of the footprints matched the size

and tread pattern of the shoes Rans wore that day. Officers detained Rans, and Sarah was brought to the scene to see if she could identify Rans.

[7] Sarah was in the back of a patrol car when she looked at Rans. She stated that because of the way the sun lit the stairwell through a window, Rans's hair looked different from what she had observed at the house. However, once she looked at pictures that were in his wallet, Sarah told the officers that Rans looked like the man who had broken into the house.

[8] On December 22, 2012, the State charged Rans with burglary as a Class B felony, and a two-day jury trial was held on November 3 and 5, 2014. At trial, Sarah testified that she was eighty percent sure of her identification of Rans on the day of the burglary. She also stated that when Rans walked past her in the house, "she could have reached out and touched him," and that, upon entering the courtroom, she "recognized [Rans] immediately" as the person that had broken into her mother's home. (Tr. 66, 70).

[9] The jury found Rans guilty of burglary, and the trial court sentenced him to twelve (12) years, with six (6) years executed in community corrections, six (6) years suspended, and eighteen (18) months on probation. Rans now appeals.

## Discussion

[10] Rans claims that the evidence is insufficient to support his conviction for burglary.

[11] When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative

evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks, citations, and footnote omitted) (emphasis in original).

[12] To convict Rans of Class B felony burglary as charged, the State had to prove that he broke and entered Dr. Horn's residence with the intent to commit theft. *See* IND. CODE § 35-43-2-1. Rans argues that the evidence is insufficient because no physical evidence linked him to the burglary, the timeline of events as established at trial made it impossible for him to commit the burglary, and there were discrepancies in Sarah's identification. However, we need not address his first two arguments because, according to our standard of review, we only consider the evidence supporting the jury's verdict. *Drane*, 867 N.E.2d at 146.

[13] The evidence most favorable to the conviction shows that Sarah was in her mother's home and heard a crash coming from downstairs. When she came

out of her bedroom, she heard noises coming from her mother's room and saw a man with a heavy black coat walk out. After officers detained Rans, Sarah came to the scene, looked at Rans, and stated that she was eighty percent sure that he was the man that had broken into her mother's house. As she looked at photographs in Rans's wallet, she became more confident in her identification. On the day of the trial, Sarah stated that as soon as she saw Rans, she recognized him. She also identified the coat found in the wooded area as the one that Rans was wearing when he was in the house.

[14] The jury heard Sarah's testimony about the certainty of her identification, chose to believe her, and found Rans guilty. His argument about discrepancies in Sarah's identification is simply a request to reweigh her credibility, which we will not do on appeal. *See id* at 147. Accordingly, we affirm Rans's conviction for Class B felony burglary.

[15] Affirmed.

Crone, J., and Brown, J., concur.